UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DOUGLAS JACKSON,

                    Plaintiff,                    Case No 1:18-cv-1075

v.                                                Honorable Janet T. Neff

UNKNOWN BEREAN et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner. Under Federal Rule of Civil Procedure 21, the Court is permitted to drop parties *sua sponte* when the parties have been misjoined. Pursuant to that rule, the Court will drop as misjoined Defendants Janicki, Bellinger, Hensley, Johnson, Brown, Stone, Baker, Clouse, Ball, Thomas, and Crompton and dismiss Plaintiff's claims against them without prejudice. The Court also will deny Plaintiff's pending motions.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF). Plaintiff sues MDOC Director Heidi Washington and the following ECF officials: Law Librarian (unknown) Berean; Warden Les Parish; Correctional Officers Wayne Janicki, (unknown) Bellinger, M. Brown, and (unknown) Stone; Quartermaster J. Hensley; Prison Counselor Kendra Johnson; Sergeant Victor A. Baker;

Inspector Jeffrey Clouse; Deputy Wardens (unknown) Ball and (unknown) Thomas; and Dr. Roger Crompton.

Plaintiff's amended complaint concerns a series of unrelated claims arising between May 31, 2018, when he arrived at ECF, and September 1, 2018, two weeks after he filed his original complaint.[1]   Plaintiff's first set of allegations concern Defendant Berean's alleged interference with Plaintiff's access to the courts.  Plaintiff complains that when he arrived at ECF on May 31, 2018, Plaintiff immediately notified Defendant Berean, who is responsible for administering the legal-writer program at ECF, that he needed to be assigned a legal writer for multiple purposes: (1) to file a motion for reconsideration of the June 4, 2018, order of the United States Supreme Court in *Jackson v. Bouchard*, No. 17-8351 (U.S. June 4, 2018); (2) to file a federal habeas corpus action following the Michigan Supreme Court's May 1, 2018, order in *People v. Jackson*, No. 156683 (Mich. May 1, 2018); (3) to file an application for leave to appeal to the Michigan Court of Appeals as directed by the Michigan Supreme Court in its June 22, 2018, order in *People v. Jackson*, No. 157835 (Mich. June 22, 2018); and (4) to file three petitions for judicial review of MDOC rehearing denials.[2]  (Am. Compl., ECF No. 9, PageID.182-183.)

Plaintiff alleges that Defendant Berean did not provide him a legal writer for the first matter, so he was forced to file a motion for reconsideration in the United States Supreme Court by himself, despite the fact that he had no legal training.  He alleges that he has not yet been able to file the federal habeas action, referenced as item 2.  Plaintiff claims that, with respect to

---

[1] Plaintiff's original complaint contained some of the same allegations as his amended complaint.  However, the original complaint and attachments focused primarily on alleged sexual assault by Defendant Janicki, and only secondarily on the alleged interference with his access to the courts by Defendants Berean, Parish, and Washington. Plaintiff's amended complaint also contains numerous additional claims and defendants, though Plaintiff has dropped one defendant, as well.

[2] The Court notes that Plaintiff's representation that he advised Defendant Berean about all of these matters on May 31, 2018, clearly is not credible, given that first and third judicial actions did not take place until after that date.

item 3, Defendant Berean provided him the document for filing on July 19, 2018, when it was due on July 20, 2019. Finally, with respect to item 4, Plaintiff alleges that Defendant Berean has provided no legal-writer assistance.

Plaintiff alleges that, on June 22, 2018, Defendant Berean told him that she had made copies of his complaint, but that Plaintiff could not expect to receive assistance from legal writers as long as he kept filing suits against the department. Plaintiff asked Defendant Berean on June 26, 2018, when she intended to assign him a legal writer so that he could meet deadlines. She told him that he had a lot of nerve asking, after he repeatedly filed lawsuits and grievances against staff. Plaintiff filed a grievance against Berean on June 29, 2018.

On July 19, 2018, Berean allegedly refused to make copies of certain documents that Plaintiff claimed to need for his appeal of his Class-II misconduct hearing decisions. When Plaintiff asked again, she told him to file another grievance, which Plaintiff did the following day. On July 20, Plaintiff received a canary copy of a disbursement form for $2.56 in legal copies, and the amount was charged to his account. He asserts that contrary to the representation in the disbursement form, he did not refuse to sign the form. He alleges that Berean instead demanded that he sign the form under a threat of initiating an administrative hearing. Plaintiff filed another grievance on July 26, 2018.

On July 23, 2018, Plaintiff asked Berean to provide him with a legal writer to assist in preparation of a motion to lift a stay and an amended habeas petition, to be filed in *Jackson v. Berghuis*, No. 2:15-cv-11622 (E.D. Mich.). Because of Berean's refusal, Plaintiff allegedly was forced to seek help from other prisoners in order to file the motion and amended petition. On August 16, 2018, Plaintiff asked Defendant Berean to provide him assistance in preparing a motion for reconsideration of this Court's opinion dated August 6, 2018, in *Jackson v. Powell*, No. 1:18-

cv-466 (W.D. Mich.). Berean refused Plaintiff's request, forcing Plaintiff to seek the assistance of other prisoners in preparing and filing a notice of appeal. Plaintiff also alleges that Defendant Berean refused to provide a legal writer to prepare a response to the defendant's motion for summary judgment on the basis of exhaustion in *Jackson v. Feliciano*, No. 2:17-cv-77 (W.D. Mich.). Plaintiff alleges that the denial has deprived him of the ability to proceed in that action.

On August 24, 2018, Defendant Berean approved Plaintiff for two extra hours of law library, given his October 2018 filing deadline in *Jackson v. Parish*, No. 2:15-cv-11622 (E.D. Mich.). Plaintiff complains, however, that on August 30, 2018, he was issued two Class-II misconduct tickets for insolence for conduct that occurred in the library. Defendant Berean warned Plaintiff that, if he was found guilty of the misconduct charges, he would lose his library privileges for 60 days. After he was found guilty, Berean imposed the sanction she had threatened. Plaintiff complains that the sanction violated MDOC Policy Directives 05.03.115 ¶ Z (permitting the barring of access to the library after a prisoner is found guilty of a Class I or Class II misconduct in the library) and 04.05.12 ¶¶ V, W, CC (barring the withholding items or privileges including library access, for purposes of punishment, but permitting such sanctions for serious reasons of safety or security). Plaintiff contends that he does not present a security or safety risk, so the taking of his library privileges can only have been done in order to retaliate against Plaintiff for filing grievances.

Plaintiff next challenges Defendant Washington's adoption of and Defendant Parish's continuing enforcement of an electronic law library (ELL) system in 2014, which Plaintiff alleges violates his right to access the courts, because it requires that a prisoner have some computer knowledge to use it. In addition, he complains about Washington's policy and Parish and Berean's enforcement of library-access policy for prisoners in segregation. Segregation

prisoners are not allowed to go to the library and may only receive upon request five items at one time, three days each week. MDOC Policy Directive 05.03.115 ¶ R. Plaintiff argues that he does not always receive the items he requests, he has to return them the next day, and he cannot review sources to determine which requests to make.

Plaintiff alleges that all of these policies deprive him of his right to access the courts. He contends that the policy prevents him from filing a brief challenging the constitutionality of Mich. Comp. Laws § 600.2963(8) (respecting the grant of pauper status in cases where the prisoner owes a filing fee), which the Michigan Court of Appeals applied to bar his complaint for superintending control in *In re Jackson*, No. 339724 (Mich. Ct. App.).

Plaintiff also argues that he suffered actual injury in another case, due to Defendant Washington's policies. In *Jackson v. Feliciano*, No. 2:17-cv-77 (W.D. Mich.), defendant Feliciano moved for summary judgment on April 3, 2018, asserting that Plaintiff had not properly exhausted his administrative remedies. Plaintiff alleges that he had no available remedies in that case, because he was on modified grievance access and the grievance coordinator at MBP had denied him a Step-I grievance form.

Plaintiff complains that Defendant Berean's denial of a legal writer and Defendant Washington's policies also prevented him from responding to a defendant's motion for summary judgment on the basis of exhaustion in *Jackson v. Bastian*, No. 2:18-cv-16 (W.D. Mich.). Plaintiff also asserts that he was prevented from exhausting his administrative remedies by threats and intimidation.

Plaintiff also alleges that the actions and policies of Berean, Washington, and Parish interfered with his right to access the courts in *Jackson v. Mich. Dep't of Corr.*, No. 16-6663-AA (Baraga Cty. Cir. Ct.), when he was prevented from filing an application for leave to appeal to the

Michigan Supreme Court to remand to the court of appeals on the ground that Mich. Comp. Laws § 600.2963(8) was unconstitutional when applied to Plaintiff's pro se application for leave to appeal the denial of his petition for judicial review.

In addition, Plaintiff complains that Defendant Berean denied him access to the courts by refusing to provide Plaintiff a legal writer to prepare a complaint seeking injunctive relief in this Court from Berean's imposition of a 60-day bar on his library access. Plaintiff argues that he therefore was required to rely on the advice of prisoners untrained in the law to prepare his "motion" (i.e., the original complaint in this action). Plaintiff alleges that the actual injury he suffered was an inability to obtain relief from the library restriction before it had expired.

Plaintiff also complains that his placement in the Start Unit, which was set forth in a Director's Office Memorandum (DOM) on December 20, 2017, was improper, because he did not fit the requirements of the DOM. *See* Mich. Dep't of Corr., DOM 2018-22 (Dec. 20, 2017). He also complains that the pilot program outlined in DOM 2018-22 should have only had effect during the year it was issued and that it should have either been made policy or terminated. Plaintiff alleges that Defendants Washington and Parish denied him his rights by implementing the DOM to place him and keep him in the Start Unit.

Plaintiff further alleges that, on September 11, 2018, Defendant Berean told Plaintiff that he would not be provided a legal writer for an unspecified challenge to his criminal conviction. On September 12, 2018, he was denied white business envelopes for mailing to the courts. On September 13, 2018, Prison Counselor Surbrook (not a defendant) told Plaintiff that ECF staff would cause him to miss every court date respecting his pending litigation. Plaintiff alleges that he was deprived of paper on September 14-16, 2018, and Resident Unit Manager Thomas (not a defendant) denied him paper and envelopes on September 17, 2018. On September

21, 2018, Defendant Berean told Plaintiff, "I could say that you never asked for legal writer assistance." (Am. Compl., ECF No. 9, PageID.216.)

Plaintiff's next set of allegations concern the actions of Defendant Hensley, the ECF quartermaster. Plaintiff alleges that, when he arrived at ECF on May 31, 2018, he had lost certain necessary clothing items, due to a series of transfers. During his first two weeks at ECF, Plaintiff submitted numerous requests for the necessary state-issued items, but Hensley did not respond for some period. On June 22, 2018, Defendant Johnson submitted a form CSJ-254, verifying that Plaintiff needed the items. On July 9, 2018, Hensley gave Plaintiff some, but not all, of the items he requested. Hensley then asked Plaintiff to sign for the items, but Plaintiff refused. Defendant Hensley threatened Plaintiff with a misconduct report for his refusal, but Plaintiff left with the items he had been given. However, when Plaintiff arrived at his unit, the items were confiscated by Officer Pratt, at Defendant Hensley's direction. Plaintiff immediately filed grievance #ECF-2018-07-1564-272 against Defendant Hensley. Hensley wrote a Class-II misconduct ticket against Plaintiff for disobeying a direct order and possession of stolen property – theft. Plaintiff contends that Defendant Hensley's misconduct charge was written in retaliation for the filing of Plaintiff's grievance.

Defendant Stone reviewed Hensley's misconduct charge within a few hours. Plaintiff alleges that Stone

> became loud and belligerent when I admitted to refusing to sign for the items given to me by Hensley and leaving with the items; for stating that the allegations were ridiculous; when I admitted to telling Hensley to come get my identification when he asked for it; and when I told Stone that I would not sign for state issue clothing.

(Am. Compl., ECF No. 9, PageID.198.) Defendant Stone then elevated the misconduct charge to a Class-I misconduct (major misconduct), which Plaintiff argues was not proper under prison

policy. The elevated offense was nonbondable, so Stone escorted Plaintiff to segregation and allegedly placed Plaintiff in the worst cell, saying,

> You are a threat to my friends and the community. You wrote grievances against Boyer, accused Janicki of raping you, and you're a rapist. You will not be rode out. You will stay in segregation. Let's see you do your legal work now you fuc*ing clown.

(*Id.*, PageID.199.)

The following day, July 10, 2018, the toilet in Plaintiff's cell overflowed, contaminating the floor and some of Plaintiff's legal documents with feces. The contaminants remained on the floor until Plaintiff was released from segregation on August 17, 2018, despite his many requests to have prisoners clean it who had biohazard certifications. Plaintiff allegedly filed a grievance against Defendants Stone, Parish, and the housing staff on July 12, 2018, which was never processed. Plaintiff complains that the unsanitary conditions may have affected his health, but he has not been tested. Plaintiff also claims that he was denied the right to place an indigent store order, so he could not purchase hygiene items. He also alleges that the electric razor he ordered on June 5, 2018, was never given to him, despite the fact that it was authorized and the obligation to pay was added to his prison loan bill.

Plaintiff received a hearing on the elevated misconduct charge by a hearing officer, and he was found guilty on July 12, 2018, and he received a sanction of 14 days of loss of privileges. Plaintiff alleges that the elevation of the charge was retaliatory and violated prison policy and due process.

Plaintiff contends that Defendant Hensley continued to retaliate against him after his release from administrative segregation, because Hensley declined to return to Plaintiff the property he previously ordered confiscated, leaving Plaintiff with insufficient clothing. On August 22, 2018, Plaintiff was denied access to his health care appointment because he arrived wearing

shorts. Plaintiff returned to his unit and told his assistant resident unit supervisor about being denied health care because he lacked clothing. He was advised to work it out with the quartermaster. Plaintiff wrote a letter to Defendant Warden Parish on August 23, 2018, explaining what had happened. Although Plaintiff did not receive an itinerary authorizing him to go to the quartermaster on August 23, officers in his unit instructed him to go to the quartermaster. When Plaintiff arrived, Defendant Hensley asked, "What do you need." (*Id.*, PageID.202.) Hensley then gave Plaintiff the items he requested. Because he had not expected to receive the items, Plaintiff did not bring his other state-issued items for exchange. When Plaintiff returned to his unit, he collected the items he had in his cell, but he did not deliver them to Hensley. Instead, he gave them to the laundry porter.

On August 23, 2018, Defendant Hensley wrote a "Destruction or Misuse of Property" notice. Defendant Johnson conducted a hearing on September 4, 2018, at which Plaintiff showed Johnson the laundered items he could have given Hensley and showed Johnson the form DSJ-254 that Defendant Johnson had completed on June 22, 2018, which together allegedly indicated that Plaintiff did not possess the items he was accused of destroying. Johnson adjourned the hearing for further investigation, but refused to accept the since-laundered items. On September 10, 2018, Defendant Johnson issued a hearing report finding Plaintiff guilty of the charged offense. Plaintiff alleges that the facts did not support a finding of guilt for destruction of property under MDOC Policy Directive 03.03.105, Attachment A. He therefore contends that Johnson's decision was made for the sole purpose of oppression and that Plaintiff was wrongfully charged $33.38 in violation of due process.

In his next set of allegations, Plaintiff alleges that, on July 6, 2018, Defendant Janicki also began "harassing and engaging in predatory conduct by stalking me." (*Id.*,

PageID.204.)  On July 7, Janicki allegedly "began sexually assaulting me the dates that Janicki worked in building 300 and I was scheduled law library." (*Id*.)  For the specifics of his sexual-assault claim, Plaintiff incorporates by reference the allegations contained in his health care requests dated July 7 and 11, 2018, and his grievances and grievance responses. (*Id*.; Attach. to Compl, ECF No. 1-1, PageID.17-21.)  Plaintiff's most specific allegation about the sexual abuse is contained in his health-care request of July 7, 2018, which states:

> Upon my arrival and walk through the mental [sic] detector (I was clear) correction officer Jenski [sic] searched me in a sexual manner.  Running his hands between my thighs up to my testicle touching them.  When I expressed my displeasure Jenski said "be quiet or leave."  I do not have to be sexually assaulted to attend law library. I am reporting the sexual assault to health care.

(Attach. to Compl., ECF No. 1-1, PageID.17.)  Similarly, in his amended complaint, Plaintiff alleges that, "[u]nder the guise of pat-down search . . . Janicki would touch my testes by running his hands up my inner thighs."  (Am. Compl., ECF No. 9, PageID.204-305.)  Plaintiff alleges for the first time in his amended complaint that Janicki's actions caused Plaintiff to experience extreme pain in his testes.  Plaintiff claims that Janicki's conduct amounted to second-degree criminal sexual conduct under Michigan law.  He contends that Defendant Warden Parish was made aware of Janicki's behavior when other prisoners complained, yet Parish failed to prevent Janicki from violating Plaintiff's Eighth Amendment rights.

On August 30, 2018, Plaintiff allegedly was given a pass to bring his documents to the law library for copying.  When Plaintiff came into Building 300, where the law library is located, Defendant Janicki stopped Plaintiff and ordered Plaintiff to give Janicki his legal papers. Plaintiff told Janicki not to jumble the documents, because they had to be copied in the correct order.  Janicki allegedly looked Plaintiff in the eye and said, "You should have thought about that when you reported that I sexually assaulted you.  Did you think my co-workers would believe you

over me. Let's see if you can straighten out this shit when I'm done here." (*Id.*, PageID.206.) Janicki then jumbled the papers.

According to Plaintiff's own allegations, when Plaintiff entered the library, he told the other inmates that Defendant Janicki was "just being an asshole because I reported that he sexually assaulted me." (*Id.*, PageID.207.) Defendant Bellinger heard the remark and told Plaintiff that if he said it again, he would be going to segregation. Plaintiff responded, "He did sexually assault me, and I can say what I want." (*Id.*) Bellinger then radioed for backup and had Plaintiff escorted out. Bellinger wrote a Class-II minor misconduct charge against Plaintiff for insolence, alleging that Plaintiff had said, "'That stupid fat fuc*er took my paperwork out of order.'" (*Id.* at 4.) Plaintiff complains that the charges violated his First Amendment right to freedom of speech. He argues that he was neither loud nor angry, and he denies being a threat to staff or the security of the facility. Defendant Snow found Plaintiff guilty of both the misconduct charge written by Bellinger and a similar charge written by Captain Duby about the same event. Snow imposed 25 days loss of privileges on each charge.

Plaintiff next alleges that, on September 6, 2018, at 8:20 a.m., Defendant Brown wrote a misconduct charge against Plaintiff, alleging that Plaintiff created a disturbance and was insolent. Brown alleged that Plaintiff yelled statements such as, "'You a rat'; '[F]uc* these c/o's they are rats'; 'Go write the ticket you rats.' Inmates directed there [sic] attention toward me." (*Id.*, PageID.208.) That same date, Defendant Baker elevated the ticket to a Class-I misconduct and revoked the Plaintiff's bond for the safety and security of the unit, stating, "[B]ond revoked due to the prisoner[']s bla[t]ant disregard for the staff[']s authority and rules of the unit." (*Id.*) Plaintiff argues that Baker improperly elevated the ticket to a Class I, and he claims that he did not cause any major problem within the meaning of the defined offense. Hearing Officer Burke found

Plaintiff guilty of creating a disturbance and insolence and imposed 10 days of detention. The same day, Defendants Clouse and Johnson reclassified Plaintiff to administrative segregation. Plaintiff alleges that Clouse and Johnson, as well as Defendant Deputy Wardens Ball and Thomas, are responsible for depriving Plaintiff of due process, because they did not assign him to the least restrictive housing option and relied on an improperly elevated misconduct. In addition, Plaintiff contends that his placement in segregation undoubtedly was designed to prevent him from using the law library. Plaintiff also alleges that Defendant Washington is responsible, because she establishes the misconduct and classification policies. And Plaintiff adds that the policies were misapplied, in violation of due process.

Plaintiff next complains that officers who are not defendants in this action issued false or abusive misconduct tickets on June 20, 2018 (destruction or misuse of property for stopping the cell door), and June 27, 2018 (for disobeying a direct order), but that Defendant Parish failed to ensure that the hearing officer review unit reviewed the security footage from both incidents, thereby depriving Plaintiff from showing that he did not violate the rules. He also alleges that Defendant Washington failed in her duty to supervise the hearing procedures.

Plaintiff next complains that, on September 21, 2018, Officer Guzikowski (not a defendant) refused to provide Plaintiff with toilet paper, forcing Plaintiff to use other paper, which caused his hemorrhoids to bleed. Guzikowski purportedly stated that he was doing so because Plaintiff was filing a lawsuit against Defendant Berean. Plaintiff was treated for his hemorrhoids by two ECF nurses on September 19, 2018. Guzikowski told Plaintiff that he would not receive further medical care for his hemorrhoids. Plaintiff also alleges that Defendant Crompton refused to provide Plaintiff treatment for his hemorrhoids. Plaintiff alleges that Defendant Crompton has prescribed Tamsulosin HCL for Plaintiff's prostate problems, but Crompton performed no further

testing. Plaintiff alleges that Defendant Crompton's refusals to treat violated the Eighth Amendment and were taken in retaliation for Plaintiff's attempts to exercise his Eighth Amendment right to medical care.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.    Misjoinder

The joinder of claims, parties, and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). This does not mean, however, that parties should be given free rein to join multiple plaintiffs and multiple defendants into a single lawsuit when the claims are unrelated. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007) (per curiam); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (adopting magistrate judge's report).

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor*, 661 F. Supp. 2d at 778, and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778.  When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts of . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that

were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under

the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some

form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter

frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by

liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA

also contains a "three-strikes" provision requiring the collection of the entire filing fee after the

dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in

forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three

strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson

v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one

complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies

the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant
> 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated
> claims against different defendants belong in different suits, not only to prevent the
> sort of morass that [a multi]--claim, [multi]-defendant suit produce[s] but also to
> ensure that prisoners pay the required filing fees--for the Prison Litigation Reform
> Act limits to 3 the number of frivolous suits or appeals that any prisoner may file
> without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person -- say, a suit
> complaining that A defrauded the plaintiff, B defamed him, C punched him, D
> failed to pay a debt, and E infringed his copyright, all in different transactions --
> should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166,

168-69 (3r Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based

on actions taken after the filing of his original complaint would have defeated the purpose of the

three strikes provision of PLRA); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464

(5th Cir. 1998); *Shephard v. Edwards*, 2001 WL 1681145, *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should his claims turn out to be frivolous.

Defendants Berean and Parish are the first two Defendants named in the action. In addition, the first half of the complaint is addressed to the actions of Defendant Berean to interfere with Plaintiff's right to access the courts, including the enforcement of policies established by Defendant Washington and continued by Defendant Parish. These claims are not related to the claims against the other parties. They do not arise from the same transactions, and there is no overlap with respect to the individuals involved or the time in which the events at issue occurred. In other words, apart from the fact that all the claims in this action involve Plaintiff's civil rights, there is no common question of law or fact between the claims against Defendant Berean and the claims against the other defendants, with the exception of the access-to-the-courts claims against Defendants Parish and Washington. Accordingly, the claims against Defendants Janicki, Bellinger, Hensley, Johnson, Brown, Stone, Baker, Clouse, Ball, Thomas, and Crompton are not properly joined to the claims against the other defendants.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572-573 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

In this case, Plaintiff brings his causes of action against the improperly joined defendants under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the

statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of the actions about which Plaintiff complains occurred in 2018, well within the three-year period of limitations. Those claims are not at risk of being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dropped and the claims against them dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Janicki, Bellinger, Hensley, Johnson, Brown, Stone, Baker, Clouse, Ball, Thomas, and Crompton from the action, and dismiss Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits by Plaintiff.[3] *See Coughlin*, 130 F.3d at 1350 ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

III.    Pending Motions

Plaintiff has filed a "Motion for Declaration" (ECF No. 11), in which he seeks to add additional factual allegations and a criminal claim against Defendant Stone. Given that the Court dismisses Defendant Stone as improperly joined in this action, Plaintiff's motion will be denied as moot.

Plaintiff also has filed an "Emergency Motion to Stop Prison Guard Douglas Black's Threats of Death, Physical Harm and Other Harassment During the Pendency of This Civil

---

[3] Plaintiff is cautioned that he must limit all future actions to Defendants who are transactionally related to one another.

Action" (ECF No. 14). Plaintiff alleges that Correctional Officer Black (not a Defendant) has engaged in hostile actions toward him in retaliation for the filing of his lawsuit, including degrading him, depriving him of a couple of meals, and placing him on food loaf, one serving of which allegedly was contaminated with fingernail clippings. He seeks an injunction against Officer Black. The Court construes Plaintiff's motion as one seeking preliminary injunctive relief.

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See*

*Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his § 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his remaining claims. Further, success on those claims would not entitle him to relief on his motion, because he does not seek to enjoin any of the remaining Defendants. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights sufficient to support his motion for injunctive relief.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Although Plaintiff alleges in his motion that he faces a risk of death, his allegations are limited to complaints and the events that occurred on limited dates – November 13-14, 2018, and December 20-25, 2018 – which resulted in Plaintiff being subjected to harassing and unpleasant treatment, not a risk of death. Moreover, an injunction against any Defendant in the instant case will not resolve Plaintiff's issues with Defendant Black, and Plaintiff remains free to file grievances and subsequently file another civil rights action against Defendant Black for the allegedly unconstitutional conduct. For these reasons, Plaintiff has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction against any Defendant in this case.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, Plaintiff's motion for preliminary relief will be denied.

### Conclusion

For the foregoing reasons, the Defendants Janicki, Bellinger, Hensley, Johnson, Brown, Stone, Baker, Clouse, Ball, Thomas, and Crompton will be dropped from this action because they are misjoined, and Plaintiff's claims against them will be dismissed without prejudice. The Court will deny as moot Plaintiff's "Motion for Declaration" (ECF No. 11). The Court also will deny Plaintiff's emergency motion (ECF No. 14).


Dated:   January 22, 2019                         /s/ Janet T. Neff
                                                  Janet T. Neff
                                                  United States District Judge