UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DOUGLAS CORNELL JACKSON,

            Plaintiff,

                                        Case No. 1:18-cv-1075

v.

                                        Honorable Janet T. Neff

UNKNOWN BEREAN et al.,

            Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court previously dropped eleven of the named Defendants and dismissed the claims against them without prejudice, because they were misjoined. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against the remaining Defendants.

## Discussion

I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF).  Plaintiff sues MDOC Director Heidi Washington and the following ECF officials:  Law Librarian (unknown) Berean; Warden Les Parish; Correctional Officers Wayne Janicki, (unknown) Bellinger, M. Brown, and (unknown) Stone; Quartermaster J. Hensley; Prison Counselor Kendra Johnson; Sergeant Victor A. Baker; Inspector Jeffrey Clouse; Deputy Wardens (unknown) Ball and (unknown) Thomas; and Dr. Roger Crompton.  In an opinion and order issued earlier, the Court concluded that Plaintiff's claims against Defendants Janicki, Bellinger, Hensley, Johnson, Brown, Stone, Baker, Clouse, Ball, Thomas, and Crompton were misjoined.  The Court therefore dismissed the claims against them without prejudice.  As a consequence, the remaining portion of Plaintiff's amended complaint involves his claims against Defendants Berean, Parish, and Washington only.

The remaining portion of Plaintiff's amended complaint concerns events arising between May 31, 2018, when he arrived at ECF, and September 1, 2018, two weeks after he filed his original complaint. Plaintiff's first set of allegations concerns Defendant Berean's alleged interference with Plaintiff's access to the courts by denying him a legal writer.  Plaintiff complains that when he arrived at ECF on May 31, 2018, he immediately notified Defendant Berean, who is responsible for administering the legal-writer program at ECF, that he needed to be assigned a legal writer for multiple purposes:  (1) to file a motion for reconsideration of the June 4, 2018, order of the United States Supreme Court, denying the petition for writ of certiorari in *Jackson v. Bouchard*, No. 17-8351 (U.S. June 4, 2018); (2) to file a federal habeas corpus action following the Michigan Supreme Court's May 1, 2018, order in *People v. Jackson*, No. 156683 (Mich. May

1, 2018); (3) to file an application for leave to appeal to the Michigan Court of Appeals as directed by the Michigan Supreme Court in its June 22, 2018, order in *People v. Jackson*, No. 157835 (Mich. June 22, 2018); and (4) to file three petitions for judicial review of MDOC rehearing denials.[1] (Am. Compl., ECF No. 9, PageID.182-183.)

Plaintiff alleges that Defendant Berean did not provide him a legal writer for the first matter, so he was forced to file a motion for reconsideration in the United States Supreme Court by himself, despite the fact that he had no legal training. He alleges that he has not yet been able to file the federal habeas action, referenced as item 2. Plaintiff claims that, with respect to item 3, Defendant Berean provided him the document for filing on July 19, 2018, when it was due on July 20, 2018. Finally, with respect to item 4, Plaintiff alleges that Defendant Berean has provided no legal-writer assistance.

Plaintiff alleges that, on June 22, 2018, Defendant Berean told him that she had made copies of his complaint, but that Plaintiff could not expect to receive assistance from legal writers as long as he kept filing suits against the department. Plaintiff asked Defendant Berean on June 26, 2018, when she intended to assign him a legal writer so that he could the meet the deadline for filing a grievance. She told him that he had a lot of nerve asking, after he repeatedly filed lawsuits and grievances against staff. Plaintiff filed a grievance against Berean on June 29, 2018.

On July 19, 2018, Berean allegedly refused to make copies of certain documents that Plaintiff claimed to need for his appeal of his Class-II misconduct hearing decisions. When Plaintiff asked again, she told him to file another grievance, which Plaintiff did the following day. On July 20, Plaintiff received a canary copy of a disbursement form for $2.56 in legal copies, and the amount was charged to his account. He asserts that contrary to the representation in the

---

[1] The Court notes that Plaintiff's representation that he advised Defendant Berean about all of these matters on May 31, 2018, clearly is not credible, given that first and third judicial actions did not take place until after that date.

disbursement form, he did not refuse to sign the form.  He alleges that Berean instead demanded that he sign the form under a threat of initiating an administrative hearing.  Plaintiff filed another grievance on July 26, 2018.

On July 23, 2018, Plaintiff asked Berean to provide him with a legal writer to assist in preparation of a motion to lift a stay and an amended habeas petition, to be filed in *Jackson v. Berghuis*, No. 2:15-cv-11622 (E.D. Mich.).  Because of Berean's refusal, Plaintiff allegedly was forced to seek help from other prisoners in order to file the motion and amended petition.  On August 16, 2018, Plaintiff asked Defendant Berean to provide him assistance in preparing a motion for reconsideration of this Court's opinion dated August 6, 2018, in *Jackson v. Powell*, No. 1:18-cv-466 (W.D. Mich.).  Berean refused Plaintiff's request, forcing Plaintiff to seek the assistance of other prisoners in preparing and filing a notice of appeal.  Plaintiff also alleges that Defendant Berean refused to provide a legal writer to prepare a response to the defendant's motion for summary judgment on the basis of exhaustion in *Jackson v. Feliciano*, No. 2:17-cv-77 (W.D. Mich.).  Plaintiff alleges that the denial has deprived him of the ability to proceed in that action.

On August 24, 2018, Defendant Berean approved Plaintiff for two extra hours of law library, given his October 2018 filing deadline in *Jackson v. Parish*, No. 2:15-cv-11622 (E.D. Mich.).  Plaintiff complains, however, that on August 30, 2018, he was issued two Class-II misconduct tickets for insolence for conduct that occurred in the library.  Defendant Berean warned Plaintiff that, if he was found guilty of the misconduct charges, he would lose his library privileges for 60 days.  After he was found guilty, Berean imposed the sanction she had threatened.  Plaintiff complains that the sanction violated MDOC Policy Directives 05.03.115 ¶ Z (permitting the barring of access to the library after a prisoner is found guilty of a Class I or Class II misconduct in the library) and 04.05.12 ¶¶ V, W, CC (barring the withholding of items or privileges, including

library access, for purposes of punishment, but permitting such sanctions for serious reasons of safety or security). Plaintiff contends that he does not present a security or safety risk, so the taking of his library privileges can only have been done in order to retaliate against Plaintiff for filing grievances.

Plaintiff next challenges Defendant Washington's adoption of and Defendant Parish's continuing enforcement of an electronic law library (ELL) system in 2014, which Plaintiff alleges violates his right to access the courts, because it requires that a prisoner have some computer knowledge to use it. In addition, he complains about Washington's policy and Parish's and Berean's enforcement of library-access policy for prisoners in segregation. Segregation prisoners are not allowed to go to the library and may only receive upon request five items at one time, three days each week. MDOC Policy Directive 05.03.115 ¶ R. Plaintiff argues that he does not always receive the items he requests, he has to return them the next day, and he cannot review sources to determine which requests to make.

Plaintiff alleges that all of these policies deprive him of his right to access the courts. He contends that the policy prevents him from filing a brief challenging the constitutionality of Mich. Comp. Laws § 600.2963(8) (respecting the grant of pauper status in cases where the prisoner owes a filing fee), which the Michigan Court of Appeals applied to bar his complaint for superintending control in *In re Jackson*, No. 339724 (Mich. Ct. App.).

Plaintiff also argues that he suffered actual injury in another case, due to Defendant Washington's policies. In *Jackson v. Feliciano*, No. 2:17-cv-77 (W.D. Mich.), defendant Feliciano moved for summary judgment on April 3, 2018, asserting that Plaintiff had not properly exhausted his administrative remedies. Plaintiff alleges that he had no available remedies in that case,

because he was on modified grievance access and the grievance coordinator at MBP had denied him a Step-I grievance form.

Plaintiff complains that Defendant Berean's denial of a legal writer and Defendant Washington's policies also prevented him from responding to a defendant's motion for summary judgment on the basis of exhaustion in *Jackson v. Bastian*, No. 2:18-cv-16 (W.D. Mich.). Plaintiff also asserts that he was prevented from exhausting his administrative remedies by threats and intimidation.

Plaintiff also alleges that the actions and policies of Berean, Washington, and Parish interfered with his right to access the courts in *Jackson v. Mich. Dep't of Corr.*, No. 16-6663-AA (Baraga Cty. Cir. Ct.), when he was prevented from filing an application for leave to appeal to the Michigan Supreme Court to remand to the court of appeals on the ground that Mich. Comp. Laws § 600.2963(8) was unconstitutional when applied to Plaintiff's pro se application for leave to appeal the denial of his petition for judicial review.

In addition, Plaintiff complains that Defendant Berean denied him access to the courts by refusing to provide Plaintiff a legal writer to prepare a complaint seeking injunctive relief in this Court from Berean's imposition of a 60-day bar on his library access. Plaintiff argues that he therefore was required to rely on the advice of prisoners untrained in the law to prepare his "motion" (i.e., the original complaint in this action). Plaintiff alleges that the actual injury he suffered was an inability to obtain relief from the library restriction before it had expired.

Plaintiff also complains that his placement in the Start Unit,[2] which was set forth in a Director's Office Memorandum (DOM) on December 20, 2017, was improper, because he did

---

[2] The Start Unit is an alternative placement to administrative segregation, which the MDOC has piloted for Level-V prisoners at the Ionia Correctional Facility and the Marquette Branch Prison, and for Level-IV prisoners at the Oaks Correctional Facility. Prisoners in the Start Unit receive individualized plans setting behavioral benchmarks.

not fit the requirements of the DOM.  *See* Mich. Dep't of Corr., DOM 2018-22 (Dec. 20, 2017). He also complains that the pilot program outlined in DOM 2018-22 should have only had effect during the year it was issued, after which it should have either been made policy or terminated. Plaintiff alleges that Defendants Washington and Parish denied him his rights by implementing the DOM to place him and keep him in the Start Unit.

Plaintiff further alleges that, on September 11, 2018, Defendant Berean told Plaintiff that he would not be provided a legal writer for an unspecified challenge to his criminal conviction.  On September 12, 2018, he was denied white business envelopes for mailing to the courts.  On September 13, 2018, Prison Counselor Surbrook (not a defendant) told Plaintiff that ECF staff would cause him to miss every court date respecting his pending litigation.  Plaintiff alleges that he was deprived of paper on September 14-16, 2018, and Resident Unit Manager Thomas (not a defendant) denied him paper and envelopes on September 17, 2018.  On September 21, 2018, Defendant Berean allegedly told Plaintiff, "I could say that you never asked for legal writer assistance."  (Am. Compl., ECF No. 9, PageID.216.)

Plaintiff claims that Defendant Berean denied him his right to access the courts by refusing to provide him a legal writer and by delaying making copies of his documents.  He also claims that Defendants Berean, Parish, and Washington violated his rights to access the courts by creating and enforcing the ELL and segregation library policies.  In addition, Plaintiff argues that Defendant Berean retaliated against him for filing grievances and lawsuits by imposing an additional 60-day sanction on his library usage after he was found guilty of two misconducts, in violation of policy; by threatening to file a notice of intent to conduct an administrative hearing to collect the funds; and by accusing Plaintiff of having a paper of hers, resulting in a search of

---

Prisoners who meet their benchmarks move progressively through the four stages of the program, with increasing privileges at each stage.  *See* Mich. Dep't of Corr. Director's Office Memorandum 2019-22 (eff. Jan. 1, 2019).

Plaintiff's cell. Further, Plaintiff argues that Defendants Washington and Berean violated his right to due process by placing him and continuing him in the Start Unit, because he did not fit the requirements of the program and because the pilot program established by DOM should only have had effect in the year it was adopted. Finally, Plaintiff suggests that Defendant Berean's actions interfered with his ability to file grievances, arguably in violation of his rights to due process and to petition government.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III.    Access to the Courts

Plaintiff alleges that Defendant Berean violated his right to access the courts on numerous occasions by denying him a legal writer, refusing to make copies of certain documents on July 19, 2018, imposing a 60-day bar on his library access, and enforcing the prison ELL and segregation library policies. In addition, Plaintiff argues that Defendants MDOC Director Washington and Warden Parish deprived him of his right to access the courts by creating or following a policy of having only an ELL library system and by creating or continuing a segregation policy that prevents segregation prisoners from visiting the library.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries

9

or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff fails to demonstrate that he suffered actual injury with respect to any of his many allegations that Defendant Berean interfered with his right to access the courts when she refused to grant him a legal writer. Although Plaintiff alleges that he should be provided a legal writer because he is not trained in the law, he does not allege that he lacks adequate education or is otherwise incapable of reading and writing. Instead, he claims that he does not have legal training.

Plaintiff is an experienced litigator in the federal courts. He has filed seven civil rights actions in this Court, including this one. *See Jackson v. Berean et al.*, No. 1:18-cv-1075 (W.D. Mich.); *Jackson v. Powell et al.*, No. 1:18-cv-466 (W.D. Mich.); *Jackson v. Coronado et al.*, No. 2:18-cv-19 (W.D. Mich.); *Jackson v. Bastian*, No. 2:18-cv-16 (W.D. Mich.); *Jackson v. Kokko et al.*, No. 2:18-cv-15 (W.D. Mich.); *Jackson v. Feliciano et al.*, No. 2:17-cv-77 (W.D. Mich.); *Jackson v. Bouchard*, No. 2:16-cv-246 (W.D. Mich.). All of his civil rights cases, with the exception of the last one listed, remain pending in this Court. Plaintiff also filed one habeas corpus petition in this Court, which the Court dismissed for lack of exhaustion on June 4, 2013. *See Jackson v. McKee*, No. 1:13-cv-464 (W.D. Mich. June 4, 2013). Plaintiff also has filed civil rights actions in the Eastern District of Michigan. *See Jackson v. Evans et al.*, No. 2:11-cv-13524 (E.D. Mich.) (dismissed for failure to state a claim on Aug. 31, 2011); *Jackson v. Saverhood*, No.

2:11-cv-13173 (E.D. Mich.) (summary judgment granted on March 13, 2014); *Jackson v. Mich. Dep't of Corr. et al.*, No. 2:14-cv-13093 (E.D. Mich.) (voluntarily dismissed on Nov. 13, 2014). Plaintiff also filed a habeas corpus petition in the Eastern District of Michigan in 2015, *see Jackson v. Parish*, No. 2:15-cv-11622 (E.D. Mich.), which was subsequently stayed while he exhausted his state-court remedies. (2:15-cv-11622, ECF No. 5). Petitioner subsequently moved to reopen the case and filed two lengthy amended petitions on September 5, 2018, and December 7, 2018. (2:15-cv-11622, ECF Nos. 34, 46.)

      In his many cases, Plaintiff has routinely drafted his own complaints, together with innumerable motions, requests for reconsideration, and appeals. He has demonstrated that he is fully capable of litigating cases without the assistance of a legal writer. Indigent habeas petitioners and civil rights complainants have no constitutional right to a court-appointed attorney. *Johnson v. Avery*, 393 U.S. 483, 488 (1969) (habeas petitioner); *Barker v. Ohio*, 330 F.2d 594, 594-95 (6th Cir. 1964) (habeas petitioner); *see also Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995) (civil rights complainant); *Lovado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993) (civil rights complainant). Moreover, a defendant's obligation to ensure that prisoners have access to the courts does not entitle that prisoner to be assisted by a legal writer unless the prisoner is unable to pursue his claim without the assistance of another or when the prisoner has no access to a law library. *See Bounds*, 430 U.S. at 828 (holding that a prison must provide either an adequate law library or other forms of legal assistance); *see also Knop*, 977 F.2d at 1004 (emphasizing that a legal access program need not include any particular element and that "the touchstone is access to the *courts*, not access to lawyers").

      In addition, Plaintiff has suffered no injury with respect to any of the denials of a legal writer. In *Jackson v. Bouchard*, No. 17-8351 (U.S.), Plaintiff drafted his own petition for

writ of certiorari. Plaintiff provides no evidence that, when the Supreme Court denied the writ, Plaintiff needed a legal writer to respond. He had his petition and the Supreme Court's denial. Nothing interfered with his making a request for reconsideration.

With respect to Berean's alleged denials of a legal writer to assist Plaintiff in filing an amended habeas corpus petition in the Eastern District of Michigan, Petitioner cannot show actual injury, because he drafted a successful motion to lift the stay and filed two lengthy amended petitions in that case. *See Jackson v. Parish*, No. 2:15-cv-11622 (E.D. Mich.) (ECF Nos. 34, 46).

In *People v. Jackson*, No. 157835 (Mich.), Plaintiff suffered no actual injury arising out of any denial of a legal writer. In an order issued on June 22, 2018, the supreme court directed Plaintiff to file a new application within 14 days, addressing only whether the court of appeals had erred in dismissing Plaintiff's delayed application for leave to appeal. *People v. Jackson*, 912 N.W.2d 560 (Mich. June 22, 2018). Plaintiff filed his new application on July 23, 2018, and it was accepted by the court under the mailbox rule. *See* Mich. Ct. Docket Sheet for *People v. Jackson*, Case No. 157835, https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx?SearchType=1&CaseNumber=157835&CourtType_CaseNumber=1. On October 2, 2018, the supreme court issued an order, remanding the case to the court of appeals to hold in abeyance pending the court of appeals' decision in *In re Jackson*, No. 339724 (Mich. Ct. App.). *People v. Jackson*, 917 N.W.2d 658 (Mich. Oct. 2, 2018).

Moreover, with respect to Plaintiff's unspecified appeals of misconduct convictions that were due when he arrived at ECF on May 31, 2018, Plaintiff utterly fails to identify those misconducts or to specify how any appeal would have been nonfrivolous. More importantly, however, a petition for judicial review of a misconduct conviction is not an attack on the prisoner's conviction or sentence; nor is it a challenge to the conditions of confinement. *Jackson v. Jamrog*,

411 F.3d 615, 619 (6th Cir. 2005); *see also Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (holding that the inability to appeal a misconduct conviction does not amount to actual injury); *c.f. Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (holding that a major misconduct conviction does not affect the duration of a prisoner's sentence in Michigan for prisoners, like Petitioner, who were convicted after 1987). For the same reasons, Plaintiff cannot demonstrate actual injury arising from Berean's June 19, 2018, refusal to provide him copies of documents necessary for his appeal of his Class-II misconduct convictions. *Rodgers*, 14 F. App'x at 409.

Plaintiff claims that, on July 23, 2018, Berean refused him a legal writer to file a motion for reconsideration of the Court's partial dismissal of his complaint in *Jackson v. Powell*, No. 1:18-cv-466 (W.D. Mich.) (ECF No. 7). Plaintiff, however, filed a motion for reconsideration (ECF No. 9) on August 29, 2018, and the motion was granted in part and denied in part on October 4, 2018 (ECF No. 18). Plaintiff utterly fails to show that he suffered actual injury from Defendant Berean's denial of a legal writer.

Plaintiff alleges that Defendant Berean refused to provide him a legal writer to prepare a response to a motion for summary judgment on the grounds of exhaustion in *Jackson v. Feliciano*, No. 2:17-cv-77 (W.D. Mich.). Plaintiff, however, was fully able to file two affidavits in response to the motion. (2:17-cv-77, ECF Nos. 66, 68.) In addition, Plaintiff thereafter was able to file a motion and brief seeking an extension of time to file a response to the report and recommendation to grant defendant's motion. (2:17-cv-77, ECF Nos. 70-71.) Thus, Plaintiff has suffered no apparent interference with his ability to enter filings in the case. Moreover, in order to respond to the defendant's motion for summary judgment on the basis of exhaustion, Plaintiff had no need for legal assistance. The question before the court was factual: Did Plaintiff exhaust his available administrative remedies? In the instant amended complaint (drafted by Plaintiff),

Plaintiff describes in detail the reasons his administrative remedies were unavailable to him. Because he was able to make those allegations in the instant case, he could easily have included them in his affidavits in response to the motion, which were filed at approximately the same time as his initial complaint in this action, three months before the report and recommendation issued in Case No. 2:17-cv-77. These facts demonstrate that Plaintiff had and continues to have within his control the resources and ability to litigate the case without the assistance of a legal writer. He therefore fails to show actual injury caused by Defendant Berean's refusal to give him a legal writer.

Moreover, because Plaintiff fails to allege facts showing actual injury to any of his pending cases, Plaintiff also fails to state an access-to-the-courts claim against Defendant Berean for imposing a 60-day library sanction when Plaintiff was found guilty of the August 30, 2018, misconduct charges. For the same reasons, Plaintiff fails to state an access-to-the-courts claim against Defendants Washington, Parish, or Berean for creating or enforcing the ELL and segregation policies.

IV.    Retaliation

Plaintiff alleges that Defendant Berean retaliated against him for filing grievances when she imposed an additional 60-day sanction on his library usage after he was found guilty of two misconducts that occurred in the library. (Am. Compl. ECF No. 9, PageID.184-185, 188.) Plaintiff bases his claim of retaliation on his belief that Berean was not authorized to impose more than a 30-day sanction arising out of a single incident. (*Id.* (citing Mich. Dep't of Corr. Policy Directive 03.03.105, Attachments D & E).) In addition, Plaintiff complains that Defendant Berean retaliated against him for refusing to sign his name on a photocopy form, by threatening to file a notice of intent to conduct an administrative hearing to collect the funds and by accusing Plaintiff

of having a paper of hers, resulting in a search of Plaintiff's cell. (*Id.*, PageID.183-84 (¶¶ 12, 14), 217-18 (¶ 102) (referencing paragraphs supporting retaliation).)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff first claims that Defendant Berean sanctioned him to a 60-day loss of library privileges in retaliation for filing grievances. Plaintiff acknowledges that he was found guilty of two misconduct charges written by officials other than Berean, both of which arose out of his behavior in the library. He argues, however, that the sanction must have been retaliatory, because the length of the sanction violated MDOC Policy Directives 05.03.115 ¶ Z and 04.05.12 ¶¶ V, W, and CC.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987));

*see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

With respect to the claim that Berean imposed a 60-day, rather than a 30-day restriction on Plaintiff's library privileges, Plaintiff's claim is conclusory. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by his protected conduct, rather than because Plaintiff was insubordinate in the library, resulting in the filing of two misconduct charges against him. Plaintiff merely concludes that because he filed numerous grievances within a few days, weeks or months before Defendants' actions, his actions must have been motivated by Plaintiff's grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Plaintiff merely

alleges temporal proximity between Defendants' conduct and his many grievances. Such allegations are insufficient to state a retaliation claim.

Moreover, Plaintiff's entire claim concerning the 60-day restriction is based on his conflation of loss-of-privileges penalties imposed by the misconduct hearing officer, *see* Mich. Dep't of Corr. Policy Directive 03.03.105, Attach. D & E, with the librarian's ability to impose a library ban following conviction on a misconduct charge, *see* Mich. Dep't of Corr. Policy Directive 05.03.115 ¶ Z. Under the latter policy, the librarian is entitled to issue an unrestricted library ban. No presumption of a 30-day ban exists.

Plaintiff's next retaliation claim against Berean has to do with Berean's allegedly retaliatory issuance of two notices of intent to take funds from his account to pay for copying of documents Plaintiff received from the Legal Writer program. Plaintiff appears to contend that Berean issued the notices of intent in retaliation for Plaintiff's refusal to sign disbursement forms, which he contends was an exercise of his First Amendment rights. According to Plaintiff's allegations and his attachments to his amended petition, Plaintiff refused to sign a legal photocopy disbursement authorization in the amount of $2.40 on July 19, 2018. (7/19/18 Disbursement Authorization I, ECF No. 9-1, PageID.246.) As a result, Defendant Berean issued a Notice of Intent to Conduct an Administrative Hearing. (7/23/18 Notice of Intent I, ECF No. 9-1, PageID.245.) That same date, Plaintiff refused to sign a disbursement authorization for $.16 (7/19/18 Disbursement Authorization II, ECF No. 9-1, PageID.248), and Defendant Berean issued a second notice of intent on July 23, 2018 (7/23/18 Notice of Intent II, ECF No. 9-1, PageID.247). Following a hearing on both notices, the funds were ordered to be disbursed from Plaintiff's account.

Plaintiff's allegations fail to support any element of a retaliation claim. First, no legal authority suggests that a prisoner's refusal to sign a form authorizing disbursement of funds for copies received by the prisoner amounts to protected conduct for purposes of a retaliation claim. Indeed, it is well established that conduct violating a legitimate prison regulation is not protected by the First Amendment. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (name-calling of guards is not protected conduct); *see also Caffey v. Maue*, 679 F. App'x 487 (7th Cir. 2017) (holding that an inmate's name-calling of guards was a challenge to the guards' authority that was not protected by the First Amendment); *Felton v. Huibregtse*, 525 F. App'x 484, 487 (7th Cir. 2013) (holding that the use of disrespectful language was not protected conduct) (citing cases); *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 858, 864 (5th Cir. 2004) (concluding that an inmate who accused a chaplain of theological errors during a religious service had engaged in an unprotected challenge to institutional authority). Plaintiff had no inherent right to refuse to pay for copies he received. Second, the holding of an administrative hearing to determine whether the prisoner's property may be taken is not adverse action. Instead, such a hearing is required by prison policy, *see* Mich Dep't of Corr. Policy Directive 04.02.105 ¶ T, and the practice ensures minimally necessary due process before property is confiscated. Third, absolutely nothing suggests that Berean was motivated by an intent to retaliate, instead of her expressed intent to collect payment for services Plaintiff received. Plaintiff's retaliation claim is frivolous.

In his final retaliation claim, Plaintiff argues that Defendant Berean ordered his cell searched in retaliation for his refusal to sign the photocopy disbursement form. As previously discussed, Plaintiff's refusal to sign a photocopy form authorizing disbursement of funds is not conduct protected by the First Amendment. Second, even if some cell searches may be deemed adverse action, especially when a prisoner's property is taken, s*ee Bell v. Johnson*, 308 F.3d 594,

606 (6th Cir. 2002) (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)), it is doubtful that a simple search without the taking of property could be so deemed. Third, absolutely nothing suggests that Defendant Berean acted with a retaliatory motive when she ordered the cell searched. Indeed, Plaintiff himself alleges that Defendant Berean believed that Plaintiff had a paper that belonged to Berean. The fact that Berean was wrong does not indicate that her motive was improper.

For all of these reasons, Plaintiff fails to state a retaliation claim against Defendant Berean.

V.     Due Process – Start Program

Plaintiff suggests that he was deprived of his right to due process when Defendants Washington and Parish established and continued to utilize the Start program beyond the year (2017) in which the pilot program was adopted. Plaintiff asserts that DOMs are valid only for one year. Therefore, he contends that his rights were violated.

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983. Moreover, Plaintiff's argument is frivolous. Although DOMs are valid only for one year, Defendant Washington issued new DOMs in 2018 and 2019, continuing the Start program. *See* DOM 2019-22 (eff. Jan. 1, 2019); DOM 2018-22R (eff. Jan. 1, 2018).

Moreover, Plaintiff's confinement in the Start unit does not violate due process. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property,

without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).  The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship.  *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Here, Plaintiff complains of his placement in the Start unit, which is a structured alternative to administrative segregation that permits prisoners to advance through progressive levels, depending on their behavior.  Such a program, which is less restrictive on the whole than

the administrative segregation at issue in *Sandin*, necessarily falls short of an atypical and significant hardship. Plaintiff's claim, therefore fails to rise to the level of a due process violation.

VI. <u>Interference with Grievances</u>

Plaintiff alleges that Defendant Berean interfered with his right to file and appeal grievances, by failing to provide him timely copies of grievance forms and failing to assign a legal writer. He also suggests that Berean's actions deprived him of his rights to due process and to petition government.

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Berean's conduct did not deprive him of due process.

Petitioner's right to petition government also is not violated by Defendant's failure to process or act on his grievances. The First Amendment "right to petition government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). Moreover, Defendant's actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405

U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

In light of the foregoing, the Court finds that Plaintiff fails to state a federal claim arising out of Berean's alleged interference with Plaintiff's filing of grievances.

VII.   Motion to Stop Transfer

Plaintiff has now filed an "Emergency Motion to Stop Plaintiff's Transfer[] During the Pendency of this 42 USC § 1983 Civil Proceeding."  The Court construes the motion as one seeking preliminary injunctive relief.

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies."  *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)).  The issuance of preliminary injunctive relief is committed to the discretion of the district court.  *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).  In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction.  *Id.*  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers.  *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009.  Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984).  The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances.  *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

In light of the Court's dismissal of Plaintiff's remaining claims, Plaintiff cannot demonstrate any likelihood of success on the merits of his underlying complaint. For that reason, and because the motion expressly seeks relief only so long as the instant action remains pending, the motion is moot.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's claims against Defendants Berean, Parish, and Washington under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's motion seeking preliminary injunctive relief will be denied.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).


Dated:   March 19, 2019                    /s/ Janet T. Neff
                                           Janet T. Neff
                                           United States District Judge